## ZACHARIAS *v.* DONALDSON.

BILLS AND NOTES — CHECK — INSURANCE PREMIUM — STOPPAGE OF
PAYMENT—RETURN OF CONSIDERATION.

>   Where the insured notified plaintiff, a general insurance
>   agent, that he would not continue in force an insurance
>   policy, but told him to see defendant, who was interested
>   as beneficiary or otherwise, who could continue it if she
>   wanted to, and defendant gave plaintiff a check and
>   received the premium receipt therefor, the effect was to
>   continue in force the policy, notwithstanding defendant's
>   subsequent attempt to repudiate the policy by stopping
>   payment of the check, where she failed to return the
>   receipt and policy, and in an action for the amount of
>   the check, a verdict was properly directed for plaintiff.

Error to Wayne; Hosmer, J.  Submitted June 21,
1915. (Docket No. 84.)  Decided September 29, 1915.

Assumpsit in justice's court by Melville H. Zacharias
against Lavina B. Donaldson for the amount of an
insurance premium.  From a judgment in favor of
plaintiff, defendant appealed to the circuit court.
Judgment for plaintiff on a directed verdict.  Defend-
ant brings error.  Affirmed.

*Galloway & Graham,* for appellant.

*Austin L. Richardson,* for appellee.

BROOKE, C. J.  On January 21, 1913, the plaintiff,
as general agent of the Connecticut Mutual Life Insur-
ance Company, through one of his agents, insured the
life of one Donaldson Craig for $10,000, and caused
to be issued to said Craig a policy requiring quarterly
payments, payable in advance, in the sum of $57.30
each.  Defendant was either the beneficiary named in
said policy or the assignee thereof under a formal as-

signment.  The second premium fell due April 21, 1913.
Thirty-one days of grace in which payment of said
premium could be made were allowed by the rules of
said company.  The insured had indicated to plaintiff
prior to the expiration of the days of grace that he
personally did not intend to continue said policy in
force by the payment of the second quarterly install-
ment of the premium.  Testifying on behalf of de-
fendant, Craig said:

"*Q.* Now, coming up to May 22d, which seems to be
the date they obtained the check, had you an interview
then with one of the solicitors upon that day?

"*A.* I do not recall.  *   *   *

"*Q.* Now, you say you did not see any of these solici-
tors, as you recall, in the office; did you get a telephone
message from him?

"*A.* Yes, sir.

"*Q.* Did you tell him to send over and get a check?

"*A.* I told him that I would not continue the policy;
if Miss Donaldson wanted to continue it herself she
could do so; and under those circumstances he could
send over and get a check, if she cared to continue the
policy.

"*Q.* Then you answered his phone in that way?

"*A.* Yes, sir.

"*Q.* But that you would not continue the policy?

"*A.* I would not do it.

"*Q.* Now, upon the date this check was issued you
were not in the office, as I understand it?

"*A.* No, sir.

"*Q.* What did you say when you learned it was
issued?

"*A.* I told her that I had emphasized the point that
I would not continue it myself; I did not want it at all.

"*Q.* But you learned by going to the office that a
check had been issued?

"*A.* Yes, sir.  *   *   *

"*Q.* Did you inform her [defendant] of that in any
way?

"*A.* I told Miss Donaldson that if she continued that
policy that she could continue it for herself, but that
I would not continue it for myself, and if she gave that

check that she should have an understanding with me beforehand; that she was to have an understanding with me before she paid that check as to who was to pay that money; that I did not intend to do it."

Defendant when upon the stand testified as follows:

"*The Court:* Did he leave you a quarterly receipt at that time when you gave the check; did you see the paper Mr. Galloway has? Is this what the solicitor gave you at the time you gave the check?

"*A.* I could not say that he gave it to me or that he sent it or what; I could not say.

"*Mr. Richardson:* That is the one that was given, anyway?

"*A.* It might have been sent."

The evidence shows conclusively that as a result of the conversation over the telephone upon the 22d day of May, 1913, being the last day of grace, plaintiff sent a messenger to the office of Craig, the insured, in which the defendant seems to have been employed, and there caused to be delivered to her a renewal receipt which continued the policy in force for another quarter, accepting her check for $57.30 in payment therefor. The record further shows that this check was deposited by plaintiff in his private account, and settlement made by him upon the same day, for the premium, with his company, and with the representative of the soliciting agent who was entitled to a certain percentage of the premium. The check was returned marked "Insufficient funds." It was presented many times during the following ten days, with the same result, and finally placed in the hands of an attorney for collection. Upon presenting it in person to the bank on which it was drawn, the attorney was notified that payment of the check had been stopped by the defendant, who had drawn it. Neither the defendant nor Craig, the insured, caused to be delivered to the plaintiff the renewal receipt of the policy of insurance.

The learned trial judge, in directing a verdict for plaintiff, charged the jury as follows:

"According to the testimony of Miss Donaldson, she notified the bank at that time after she had a conversation with Mr. Craig, not to pay the check. It does not seem to me, gentlemen of the jury, that under the circumstances of the case it is essential to determine the truth of either statement. There is no question but at the time of the giving of the check this receipt was left, the effect of which was to continue the policy in force for a period of three months. That check was not returned; consequently, under the testimony in this case, the check was taken as payment of the premium, and taken by Mr. Zacharias in that way, and it represented so much cash, and under the existing circumstances, having been taken as payment by him, there could not, unless the receipt was returned to the company—the policy and the receipt returned to the company—there could not have been a successful defense in case Mr. Craig had died within that period. Under these circumstances, there having been a failure to return the policy and receipt at the time Miss Donaldson claims to have repudiated the policy, I do not think she can now say the check is not in force."

We discover no reversible error, and the judgment is affirmed

KUHN, STONE, OSTRANDER, BIRD, MOORE, and STEERE, JJ., concurred.

The late Justice McALVAY took no part in the decision of this case.